IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| **KRISTEN WINDHAM,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| V. | § | **CAUSE NO. 7:25-cv-320** |
| | § | |
| **MARTIN COUNTY, TEXAS,** | § | |
| | § | |
| **DEFENDANT.** | § | **JURY DEMANDED** |

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

**Plaintiff Kristen Windham ("Plaintiff")** files this Complaint and would respectfully show the Court as follows:

### NATURE OF THE CASE

1. This is a case about the abuse of personal and political power by those in authority in violation of Title VII of the Civil Rights Act of 1964 and the First Amendment. The Constitution protects public employees who speak out on matters of political concern, and Title VII ensures that no employee is subjected to discrimination or retaliation on the basis of sex, to include protection against sexual harassment. **Defendant Martin County ("Defendant")** did not protect Ms. Windham's rights and instead punished her for asserting them.

### PARTIES

2. Plaintiff is an individual who currently resides in Howard County, Texas.

3. Defendant is a political subdivision of the State of Texas, located in Martin County. Defendant is a "person" within the meaning of 42 U.S.C. § 1983 and is subject to suit under that

statute. Defendant may be served through County Judge Bryan Cox, at the Martin County Courthouse, 301 N. Saint Peter Street, Stanton, Texas 79782, or wherever he may be found.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. § 1331, the Court has federal question jurisdiction because the action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and the First Amendment to the United States Constitution as well as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3).

5. Venue is proper in the United States District Court for the Western District of Texas, Midland-Odessa Division, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Martin County, Texas, which lies within this judicial district and division.

## FACTS

6. Plaintiff Kristen Windham is a seasoned legal professional with over a decade of experience serving as a paralegal and court coordinator. Her qualifications and character are strongly endorsed through letters of recommendation that she submits with her application for employment with Defendant Martin County.

7. On January 29, 2024, Ms. Windham is hired by Defendant as an administrative assistant to Sheriff Brad Ingram.

8. Ms. Windham performs her job duties in an exemplary fashion.

9. At one point, Sheriff Ingram meets her mother and grandmother, and tells them that Ms. Windham is a "huge asset to the office."

10. In March 2024, Sheriff Ingram loses the Republican primary election for Sheriff to Randy Cozart ("Cozart"), who had previously served as Martin County Sheriff. In Martin County,

the winner of the Republican primary is the *de facto* winner of the general election. Cozart is the *de facto* Sheriff-Elect.

11. On March 24, 2024, Plaintiff and her coworker Jail Administrator Aubrey Flores ("Flores") meet with Cozart for lunch.

12. During the meeting, the three discuss administrative matters concerning the eventual transition from Sheriff Brad Ingram to Sheriff Randy Cozart. The meeting also includes discussion of local political issues, including the municipal court and the mayor's office.

13. On March 27, 2024, Chief Deputy Dahl ("Deputy Dahl") calls a meeting with Ms. Windham, Ms. Flores, Sheriff Ingram, and Captain Bennie Edwards ("Captain Edwards").

14. During the meeting, Deputy Dahl and Sheriff Ingram chastise Ms. Windham and Ms. Flores for meeting with Sheriff-Elect Cozart.

15. Sheriff Ingram and Deputy Dahl disparage Sheriff-Elect Cozart, calling him a liar who cheats on his wife, and instruct the employees not to associate with him.

16. The following day, Sheriff Ingram instructs Ms. Windham not to get involved in local politics. Ms. Windham had asserted in the March 27 meeting held with Sheriff Ingram and Deputy Dahl that the discussions with Mr. Cozart included local political issues that concerned her personally as a citizen and member of the general community.

17. Ms. Windham is subjected to sexually inappropriate and unprofessional conduct by Captain Bennie Edwards. On March 27, 2024, Captain Edwards enters Ms. Windham's office and asked her to proofread a memo. When Ms. Windham notes a spelling error, Captain Edwards responded with the vulgar statement: "He can eat a bag of dicks. I don't care." The comment is offensive, unwelcome, and makes Ms. Windham feel uncomfortable.

18. On March 28, 2024, while Ms. Windham is in the restroom, Captain Edwards calls her name in the hallway. After returning to her desk, Ms. Windham calls Captain Edwards from her work-issued cell phone and explains she had been in the restroom. Captain Edwards responds, "And you didn't FaceTime me?" and laughs. Ms. Windham tells him she does not appreciate the comment. The interaction causes Ms. Windham distress and is consistent with a pattern of objectifying behavior, including repeated instances of Captain Edwards staring at Ms. Windham and looking her up and down in a manner she finds demeaning and anxiety-inducing.

19. There are complaints by other female employees about Captain Edwards at Martin County and other law enforcement agencies where he has worked.

20. Ms. Windham verbally reports Captain Edwards' conduct to County Judge Bryan Cox.

21. On April 12, 2024, Sheriff Ingram and Chief Deputy Dahl inform Ms. Windham of her termination. When Ms. Windham inquires as to the reason, Sheriff Ingram states, "Did you not have a meeting with someone?" He nods affirmatively when Ms. Windham inquires if that is a reference to her earlier meeting with Sheriff-Elect Randy Cozart. The termination letter is signed by Sheriff Ingram and states:

> After reviewing your job performance during your probationary time with Martin County, I find you work product does not meet with my expectations and further I have lost faith in your ability to perform your job for me as needed.
>
> This letter is to inform you your employment is terminated immediately.

22. Ms. Windham was never counseled or written up for anything related to the work she performed while employed under Sheriff Ingram, nor was she ever advised that her role began under a "probationary period."

23. There is no mention of a probationary period in the Martin County Employee Policy Manual. In fact, when she interviewed with Sheriff Ingram and Deputy Dahl, Sheriff Ingram told Ms. Windham he could "guarantee [her] one year of work."

24. Later the same day, Ms. Windham submits a written complaint of sexual harassment to Martin County Human Resources. Ms. Windham formally details the incidents involving Captain Edwards' harassment towards her and requests that appropriate corrective action be taken. In the complaint, Ms. Windham includes reference to Captain Edwards' alleged history of sexual harassment in previous places of employment, including prior incidents within Martin County involving at least one other employees.

25. Although Ms. Windham did not submit the written complaint until after she was fired, she had complained verbally to County Judge Bryan Cox before her termination.

26. Ms. Windham's employment is terminated less than three weeks after engaging in protected political expression and complaining about sexual harassment.

## WORKPLACE SAFETY RULES

27. Public employers must not retaliate against their employees for exercising their First Amendment rights to free speech and free association.

28. Public employers must make employment decisions based on merit, not personal or political grudges.

29. Public employers must prevent and correct sexual harassment instead of retaliating against victims.

## FIRST CAUSE OF ACTION – SECTION 1983 – FIRST AMENDMENT

30. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

31. Public employees may not be terminated for speech protected under the First Amendment. *Connick v. Myers*, 461 U.S. 138, 142 (1983).

32. Ms. Windham suffered an adverse employment action when her employment was terminated. Her speech relating to the transition between Sheriff Ingram and Sheriff Cozart involved a matter of public concern. Ms. Windham's interest in commenting on matters of public concern outweighed Defendant's interest in promoting efficiency. Ms. Windham's speech motivated Defendant's adverse employment action. Ms. Windham suffered damages as a result of Defendant's actions.

33. In addition to protecting speech, the First Amendment's freedom of speech includes an implicit "corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Mote v. Walthall*, 902 F.3d 500, 506 (5th Cir. 2018).

34. Ms. Windham's meeting with Sheriff-Elect Cozart was not within the ordinary scope of her professional duties.

35. Ms. Windham met with Sheriff-Elect Cozart on her own time, without the knowledge or permission of Sheriff Ingram or anyone else at the Martin County Sheriff's Office.

36. Ms. Windham's meeting with Sheriff-Elect Cozart was a political association. Sheriff Ingram was bitter about losing the election and did not want anybody with his office to associate with his political rival.

37. Ms. Windham's meeting with Sheriff-Elect Cozart was an expression of her view that the department should move past the election and cooperate with the incoming sheriff.

38. Even if Ms. Windham's meeting with Sheriff-Elect Cozart was not a political association, her speech with Sheriff-Elect Cozart was substantively political and therefore protected.

39. If an employee engages in protected speech and an employer is not aware of the content of the speech, and employer must investigate the matter and reasonably conclude that the employee's speech was not protected before terminating the employee for the speech.

40. Defendant, while acting under color of state law, deprived Ms. Windham of her right of free speech – as guaranteed by the First Amendment to the U.S. Constitution – in violation of 42 U.S.C. § 1983 ("Section 1983").

41. Defendant is liable under Section 1983 because if officially adopted and promulgated the decision to terminate Ms. Windham. Defendant is liable under Section 1983 because the decision was made by an official with whom Defendant had delegated policy-making authority – Sheriff Brad Ingram.

42. Despite the lack of policy and facts to substantiate the reasons and the obvious pretext of these reasons, Defendant, through its County Judge, upheld the decision made by Sheriff Ingram to terminate Ms. Windham. Therefore, Defendant Martin County is liable under Section 1983 for the violation of Ms. Windham's right to free speech and free association as guaranteed by the First Amendment of the U.S. Constitution.

SECOND CAUSE OF ACTION – TITLE VII – SEXUAL HARASSMENT

43. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

44. At all relevant times, Defendant Martin County was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964.

45. Plaintiff was an employee of Defendant within the meaning of Title VII of the Civil Rights Act of 1964.

46. Plaintiff was subjected to unwelcome and offensive behavior of a sexual nature by Captain Bennie Edwards, who was in a supervisory position. Edwards' conduct included inappropriate and vulgar sexual remarks, demeaning comments, and a history and pattern of objectifying and sexually-charged behavior that created an intimidating, hostile, and offensive work environment.

47. Defendant knew or should have known of the harassment and failed to take prompt and effective remedial action. In fact, Plaintiff was terminated on the very day she submitted a formal written complaint to Human Resources regarding the harassment.

48. As a result of Defendant's failure to act, Plaintiff suffered emotional distress, anxiety, humiliation, loss of enjoyment of life as well as economic damages including loss of income and benefits.

## THIRD CAUSE OF ACTION – TITLVE VII – RETALIATION

49. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

50. Plaintiff engaged in protected activity under Title VII when she reported the sexually harassing conduct of Captain Bennie Edwards to County Judge Bryan Cox and subsequently to the Human Resources Department.

51. Plaintiff opposed discriminatory practices when she verbally objected to Edwards' inappropriate remarks and behavior and formally submitted a written complaint outlining the harassment.

52. On April 12, 2024 – the same day Plaintiff submitted her written sexual harassment complaint – Defendant terminated her employment.

53. The proximity between Plaintiff's protected activity and the adverse employment action strongly suggests retaliatory intent.

54. Defendant's stated justification for terminating Plaintiff was pretextual and unsubstantiated. Plaintiff had not been subject to any documented performance concerns, disciplinary actions or warnings. Nor formal "probationary period" existed in Defendant's own employee policy manual.

55. Plaintiff has suffered and continues to suffer damages including but not limited to lost wages, loss of career opportunities, reputational harm and emotional distress as a direct result of Defendant's unlawful retaliatory conduct.

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

56. Plaintiff timely filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission (EEOC) on or about September 19, 2024. Plaintiff timely files this suit within ninety days of receiving the Right to Sue Notice which was issued on April 22, 2025.

## CONDITIONS PRECEDENT

57. All conditions precedent have been performed or have occurred.

## DAMAGES

58. Reinstatement is not practicable. Plaintiff has suffered actual damages in the form of past and future lost wages, fringe benefits, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. Plaintiff has made diligent efforts to find comparable alternate employment but has been unable to do so. Plaintiff is entitled

to contribution to her retirement account. Plaintiff seeks back pay, front pay, and compensatory damages for emotional distress and mental anguish.

## ATTORNEY'S FEES

59. Plaintiff was forced to engage counsel to protect her rights. Plaintiff is entitled to an award of attorneys' fees and costs (including but not limited to an award of reasonable expert witness fees).

## INTEREST

60. Plaintiff is entitled to prejudgment and post judgment interest at the highest lawful rate.

## JURY TRIAL DEMAND

61. Plaintiff demands a jury trial.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendant for the following:

a. Past and future compensatory damages as alleged above;

b. Past and future lost wages and benefits (backpay and front pay);

c. Attorneys' fees and costs;

d. Prejudgment and post-judgment interest;

e. Such other and further relief, at law or in equity, to which Plaintiff may show herself justly and lawfully entitled.

Respectfully submitted,

By: /s/ Holly B. Williams
    Holly B. Williams
    Texas Bar No. 00788674

**WILLIAMS LAW FIRM, P. C.**
1209 W. Texas Ave
Midland, TX 79701-6173
432-682-7800
432-682-1112 (fax)
holly@williamslawpc.com

**ATTORNEY FOR PLAINTIFF
KRISTEN WINDHAM**